IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

LUCAS CANTON SCHNEIDER,
Plaintiff,

v.

UNKNOWN NAMED FBI AGENTS, PHILLIP PALLENBURG, MARIANA CARPENETI, ALASKA DEPARTMENT OF CORRECTIONS, ALASKA PROBATION OFFICER IAN PETER SCHOARE, but not limited to.
Defendants.


RECEIVED
FEB 04 2025
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

Case No.:
**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Demand July

## JURISDICTION

1. **This Court has subject matter jurisdiction over this action pursuant to the following statutes and legal provisions:**

    a) **28 U.S.C. § 1331 (Federal Question Jurisdiction)** – This action arises under the **United States Constitution, federal statutes, and treaties**.

    b) **Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)** – Plaintiff asserts claims for **violations of constitutional rights by federal officials acting under color of law**, including violations of the **First, Fourth, Fifth, Eighth, and Fourteenth Amendments**.

    c) **42 U.S.C. § 1983** – Providing a cause of action against persons acting under color of **state law** who violate constitutional rights.

    d) **42 U.S.C. § 1985** – Addressing **conspiracies** to interfere with civil rights, including deprivation of equal protection and obstruction of justice.

    e) **42 U.S.C. § 1986** – Imposing liability on individuals with **knowledge of civil rights violations** who fail to prevent them.

    f) **18 U.S.C. § 2261A (Interstate Stalking and Harassment)** – Prohibiting **harassment, surveillance, and intimidation** that crosses state lines and causes **substantial emotional distress** or **places the victim in fear for their life or safety**.

    g) **18 U.S.C. § 241 (Conspiracy Against Rights)** – Criminalizing conspiracies by two or more persons to **injure, oppress, threaten, or intimidate** any person exercising their constitutional rights.

    h) **18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)** – Prohibiting government officials from **depriving individuals of rights protected by the Constitution or federal law**.

    i) **18 U.S.C. § 1512 (Witness Tampering and Retaliation)** – Prohibiting **harassment, intimidation, or retaliation** against individuals involved in legal proceedings.

j) **18 U.S.C. § 1961 et seq. (RICO – Racketeer Influenced and Corrupt Organizations Act)** – Providing civil remedies against those engaged in **a pattern of racketeering activity**, including **systematic harassment, surveillance, and obstruction of justice**.

k) **18 U.S.C. § 2331 et seq. (USA PATRIOT Act Violations and Wrongful Targeting)** – Addressing **unlawful surveillance and intelligence abuses** under the guise of national security.

l) **The Federal Tort Claims Act (FTCA) – 28 U.S.C. §§ 2671-2680** – Waiving sovereign immunity for **tortious acts committed by federal employees** while acting within the scope of their employment.

m) **The Fourth Amendment (via Bivens Action)** – Protecting against **unreasonable searches, seizures, and surveillance without a warrant**.

n) **The Eighth Amendment (via Bivens Action)** – Prohibiting **cruel and unusual punishment**, including **intentional chemical exposure and denial of medical care**.

o) **The Alien Tort Statute (ATS) – 28 U.S.C. § 1350** – Granting jurisdiction over **violations of international human rights laws and treaties**.

2. **International Human Rights Treaties and Conventions**

    a) **The International Covenant on Civil and Political Rights (ICCPR)** – Binding the United States to protect **the right to life, freedom from torture, and due process rights** under international law.

    b) **The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT)** – Prohibiting **torture, inhumane treatment, and the use of chemical exposure to inflict suffering**.

    c) **The Universal Declaration of Human Rights (UDHR)** – Establishing **fundamental human rights protections** against surveillance, harassment, and arbitrary detention.

    d) **The American Declaration on the Rights and Duties of Man** – Affirming the **right to personal security, due process, and protection against government abuses**.

    e) **The International Convention on the Elimination of All Forms of Racial Discrimination (ICERD)** – Protecting against **racially motivated targeting and discrimination by law enforcement or government agencies**.

3. **Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because:**

    a) A **substantial part of the events or omissions giving rise to the claims** occurred within this District.
    b) One or more **Defendants reside in, operate within, or have substantial connections to this District**.
    c) The **Plaintiff is currently located within this District, and the harm is ongoing**.

4. Additionally, Plaintiff is a member of a **protected class** under **Title VII of the Civil Rights Act of 1964** and other federal anti-discrimination laws, and alleges that the **Defendants** have engaged in **racial discrimination** against Plaintiff. Plaintiff's claims of racial discrimination stem from **Defendants' actions** that have disproportionately targeted Plaintiff based on their **race** and/or **ethnicity**, in violation of constitutional protections against discrimination and harassment.

    Plaintiff further alleges that Defendants' actions have been motivated by **racial animus, prejudice,** and **discriminatory intent**, making this case a **civil rights violation** within the jurisdictional scope of federal law.

## 5. Supplemental Jurisdiction

This Court has **supplemental jurisdiction** over related state law claims pursuant to **28 U.S.C. § 1367(a)** because they **form part of the same case or controversy** under **Article III of the U.S. Constitution**. The state law claims arise from the **same operative facts** as the federal claims and include, but are not limited to:

1. **State Law Claims for Intentional Torts:**
   a) **Invasion of Privacy (Intrusion Upon Seclusion, Public Disclosure of Private Facts)** – Due to unlawful **24/7 surveillance, tracking, and exposure of private affairs**.
   b) **Intentional Infliction of Emotional Distress (IIED)** – Resulting from prolonged **harassment, stalking, surveillance, and chemical exposure**.
   c) **Negligence and Gross Negligence** – Due to **reckless disregard** for Plaintiff's **safety, health, and constitutional rights**.
   d) **Defamation, Libel, and Slander** – If Plaintiff was subjected to **false accusations, fabricated evidence, or misleading reports affecting reputation and employment**.

2. **State Civil Rights Violations:**
   a) Violations of state constitutional protections against **unlawful surveillance, harassment, and discrimination**.
   b) Deprivation of **state statutory rights**, including those that protect against **stalking, invasion of privacy, and governmental abuses**.

3. **State Common Law Claims:**
   a) **Malicious Prosecution** – If any **baseless criminal or civil proceedings** were initiated against Plaintiff.
   b) **False Imprisonment** – If Plaintiff was **wrongfully detained or restricted** without due process.
   c) **Battery** – If there was **intentional harmful physical contact**, such as alleged **chemical exposure or injections**.

The **state law claims share a common nucleus of operative fact** with the federal claims, warranting **this Court's exercise of supplemental jurisdiction** under **28 U.S.C. § 1367(a)**.

However, if the **federal claims** are dismissed, Plaintiff reserves the right to pursue the **state law claims in state court** pursuant to **28 U.S.C. § 1367(c)**.

## 6. VENUE

Venue is proper in this Court pursuant to **28 U.S.C. § 1391(b) and (e)** because:

1. A **substantial part of the events and omissions** giving rise to Plaintiff's claims occurred **within this District and across multiple states**, including but not limited to **Alaska, Washington, Oregon, Missouri, Florida, and Illinois**, where Plaintiff has been subjected to **ongoing harassment, 24/7 surveillance, forced bodily implants, and exposure to harmful chemicals**.

2. Plaintiff has been **rendered homeless and forced to flee multiple states** due to a coordinated effort by **unknown federal officials, law enforcement agencies, and private actors acting under color of law**, creating a **de facto nationwide APB (All-Points Bulletin)**. The **full scope of this conspiracy** will be revealed through **discovery**.

3. **Examples of Shocking and Extraordinary Conduct:**

- **Non-Consensual Forced Implants**: Plaintiff has been subjected to the forced implantation of **non-consensual tracking and control devices** without medical justification or consent. These implants have been used to **inflict pain, cause physiological distress (e.g., forced movements, numbness, urinary incontinence, heart rate manipulation), and track Plaintiff's every movement**. Such actions are **not only unconstitutional but rise to the level of torture**.
- **Chemical Exposure as a Weapon**: Plaintiff has been subjected to **repeated and targeted chemical attacks**, causing severe physical harm. Exposure has resulted in **breathing difficulties, neurological damage, disorientation, and chronic pain**. These attacks have **followed Plaintiff across state lines**, demonstrating an **intentional and coordinated effort** to harm and incapacitate Plaintiff.
- **24/7 Government Surveillance and Harassment**: Plaintiff has been **under constant government surveillance** since at least **2014**, with evidence of **real-time tracking, unauthorized phone and account access, remote manipulation of electronic devices, and interference with emergency calls**. This level of **omnipresent government intrusion is unprecedented** and violates fundamental privacy rights.
- **Judicial Corruption and Denial of Due Process**: Plaintiff has faced **consistent judicial bias**, including:
    - **Being denied a bail hearing for over a year**, with falsified court records showing a hearing occurred.
    - **Being committed to a psychiatric institution without due process**, with a judge refusing to provide case law that justified the commitment.
    - **Court motions being physically altered via copy machine** to fabricate false rulings and obstruct Plaintiff's right to appeal.
- **Unlawful Incarceration and Forced Relocation**: Plaintiff was **denied the ability to travel for work and medical treatment**, unlawfully relocated **800 miles away** while under Alaska DOC custody, and denied return to home via **Interstate Compact**, in violation of federal law.
- **Attempted Murder While Under FBI Surveillance**: Plaintiff's ex-wife attempted to kill Plaintiff while the FBI allegedly observed and **failed to intervene**. Additionally, on **June 1, 2024**, an unknown individual **injected Plaintiff with an unknown substance while FBI agents watched** and subsequently refused to allow proper testing for the substance.
- **Systematic Blacklisting and Employment Interference**: Plaintiff has been **deprived of the right to work**, as federal actors have allegedly **contacted potential employers and poisoned Plaintiff's reputation**, ensuring financial destitution and continued homelessness.
- **Electronic Manipulation and Remote Torture**: Plaintiff's phone has been remotely manipulated, **preventing calls to 911 and discharging the battery when attempting to record incidents of harassment**. These actions have **directly endangered Plaintiff's life and safety**.

4. **Legal Doctrines Supporting Venue:**

- **Ongoing Violations Doctrine**: Given that Plaintiff continues to suffer **physical harm, constitutional violations, and systemic harassment**, venue is proper in **any jurisdiction where the harm is still occurring**.
- **Shocks the Conscience Doctrine**: The **deliberate and systematic use of forced bodily implants, chemical exposure, and remote torture by government actors** is so egregious and offensive to fundamental fairness that it **shocks the conscience** under the **Due Process Clause of the Fourteenth Amendment**.
- **Manifest Injustice Doctrine**: Transferring or dismissing this case would result in **manifest injustice**, as Plaintiff has already been **forced to flee multiple states,**

> denied stable housing, and subjected to extreme physical harm. Prior legal avenues have failed, necessitating this Court's intervention.
>> - **Extraordinary Circumstances Doctrine**: The **severity of harm, government misconduct, and ongoing nature of constitutional violations** constitute **extraordinary circumstances** justifying immediate equitable relief.

Because Plaintiff has suffered **severe physical harm, deprivation of rights, and targeted government harassment resulting in forced movement across the country**, this Court has the **authority and duty to hear this case** to prevent **manifest injustice** and hold all responsible parties accountable.

7.

## Defendants

Plaintiff brings this action against the following Defendants, in both their **individual and official capacities**, as they acted under color of law in carrying out the violations described in this complaint:

1. **Unknown Named FBI Agents**, who have engaged in **24/7 surveillance, electronic harassment, interstate stalking, and use of advanced tracking and control devices on Plaintiff without consent**. These agents have also allegedly **interfered with Plaintiff's employment, manipulated electronic communications, and failed to intervene in multiple life-threatening situations**.

2. **Judge Phillip Pallenburg**, who presided over Plaintiff's legal proceedings and **unlawfully denied due process, committed Plaintiff to Alaska Psychiatric Institute (API) without justification, and refused to provide case law supporting his rulings**.

3. **Judge Mariana Carpeneti**, who denied Plaintiff's right to **fair adjudication by refusing to rule on legal motions, altering court records, and enforcing unlawful sentencing practices in contradiction to Alaska law**.

4. **Alaska Department of Corrections (DOC)**, which **denied Plaintiff necessary medical treatment, exposed Plaintiff to chemicals while in isolation, facilitated unlawful imprisonment, and relocated Plaintiff 800 miles away from home without legal justification**.

5. **Ian Peterschoare, Alaska Probation Officer**, who **wrongfully filed a warrant for Plaintiff's arrest** and harassed and made false accusations to parole board to keep plaintiff in jail

6.

## STATEMENT OF FACTS

### I. Background and Ongoing Violations

1. **Plaintiff's Background**
   - Lucas Canton Schneider has been subjected to **systemic harassment, electronic manipulation, and forced relocation** since **2014**. This began with being **labeled as anti-government** by federal agents, which led to **24/7 surveillance** by the FBI and **constant violations of constitutional rights**.

2. **Initial Violations**

- In **2014**, Plaintiff became aware that they were under **surveillance by federal agencies**, primarily the **FBI**, which led to ongoing interference with **phone calls, social media accounts, and electronic communications**.
- Plaintiff's **reputation was systematically damaged** as agents allegedly interfered with job prospects and **contacted potential employers** to prevent them from finding any peace or ability to pursue any liberties.

3. THIS IS THE BACKGROUND THAT STARTED THE CONSPIRACY AGAINST PLAINTIFF TO DEPRIVE HIM OF LIFE ITS SELF.

This is when the Star Chamber like actions began and the conspiracy to violate my rights. Later in this suit you will see that the FBI actions are consistent with a nation wide like APB. As these violations have happened across 10 different states
 Bartlett Hospital in Juneau, Alaska, denied the Plaintiff emergency medical treatment on four separate occasions for the same injury. The Plaintiff had pulled four screws out of seven in a plate that was in the back of his hand. Despite the hospital taking X-rays that clearly showed the damage, they refused to provide necessary treatment on four separate occasions. This repeated refusal of care led to a life-threatening infection, requiring hospitalization and a PICC line for over a month

. Shortly after speaking out about this medical mistreatment, the Plaintiff's home was burned down. Law enforcement falsely implicated him in arson and insurance fraud, despite knowing the actual perpetrator, who was not charged. In 2015, after failing to bring charges against the Plaintiff, federal agents escalated their campaign, orchestrating a targeted psychological operation. This included radio and social media manipulation, repeatedly exposing the Plaintiff to content related to past historical events in an attempt to provoke a reaction. When the Plaintiff failed to conform to their narrative, they labeled him anti-government, intensifying their efforts.
 Attempted Murder and Chemical Exposure (2016-2017) In 2016, the Plaintiff's then-wife, under the influence and manipulation of federal agents, orchestrated the breakdown of their marriage. The federal agents coached her to take herself and the children to a women's battered shelter, despite there being no physical abuse on the Plaintiff's part. This false narrative was created with the direct assistance of federal agents, who worked to destroy the Plaintiff's family and his life. During this tumultuous time, the Plaintiff was subjected to a deliberate campaign of chemical exposure, which was inflicted by federal agents. These chemicals debilitated him to the point of being physically and mentally incapacitated. The exposure caused severe deterioration in his health, leaving him physically unrecognizable. His mind and body were so damaged that he could no longer function as he had before. The mental and physical toll of the chemicals left the Plaintiff in an extreme state of disrepair. For months, he could do nothing but sit in a dark room, unable to move or interact with the world around him. The chemical exposure, combined with the emotional devastation of losing his family, left him in a state of fear and shock—trapped in his own body, unable to perform basic functions. It was so severe that even his past work in construction could not help him. The Plaintiff, who had worked in construction for his entire life, had to be retrained from scratch. His old coworkers, seeing the state he was in, stepped in to help him regain even the most basic skills. They assisted him with tasks he once completed easily, like basic tools and routines, helping him to function again, step by step.
 Divorce and Further Manipulation (2017-2018) After being retaught how to function and facing the emotional and physical devastation caused by the federal agents' actions.

Plaintiff, Lucas Canton Schneider, was confronted with the threat of divorce. The federal agents, continuing their campaign to control and destroy his life, manipulated the Plaintiff's wife into acting as if none of the abuse, chemical exposure, or targeting had ever occurred. Feeling the pressure to not lose his children—whom he had raised alone—the Plaintiff, desperate and willing to do anything to avoid further harm, agreed to the idea of staying together for the sake of his family. A plan was made: the Plaintiff would close his successful construction company, sell everything—including his valuable Alaska commercial fishing permit—and begin a new chapter in life with his wife. He hoped this would prevent further damage to his family unit and avoid losing his children. However, when the time came to execute their plan, the Plaintiff's wife, with further assistance from the federal agents, reneged on their agreement. They helped her steal the money that was intended for the family's future, contributing to the further destruction of the Plaintiff's life. The Plaintiff's wife moved to

Wrangell, Alaska, and in an attempt to rebuild his life, the Plaintiff took out a loan to purchase a live-aboard boat, the M/V Perseus. He knew deep down that this would be the last summer he would ever see his children. And tragically, as of 2025, that remains true—he has not seen his children since.

Upon returning to her house, the Plaintiff was overwhelmed by emotional distress and struck his ex-wife. Police arrived and arrested him without incident, charging him with assault 3. During his arrest, the Plaintiff was placed in a restraint chair for no reason, with a wet rag placed over his face. The police chief lifted the rag and sprayed him with pepper spray, leaving him in the chair overnight. The next day, the Plaintiff was brought into court in the restraint chair to make him appear worse to the judge, who later presided over his divorce case. Federal agents helped the ex-wife fabricate a story, making the Plaintiff appear as though he had fractured her jaw, escalating the charge from a misdemeanor to a felony.
 The Plaintiff bailed out, but Wrangell PD took all his firearms off the boat, never to return them. After violating bail conditions, the Plaintiff was sent to Ketchikan, Alaska jail. This is when the implants were placed into me. I broke my hand and had to have surgery and when I woke up everything about my bodily functions were different. It was here that the chemical exposure began again in the Department of Corrections (DOC). The Plaintiff was assigned a public defender, Eve Souttrie, who refused to provide him with legal assistance, forcing him to take a plea deal to protect his boat from repossession.
 This plea was a horrible deal that the Plaintiff was pressured into accepting. Homelessness, Arrest, and Continued Chemical Exposure (2018) After losing my boat, I was left homeless, marking the beginning of my struggle to survive. I returned to Juneau, where I had been well-established before, but was immediately subjected to the ongoing chemical exposure that worsened my physical and mental health. I was forced to live in a tent in a rainforest, with no resources or support. I asked my probation officer, Lilly Schram, if I could initiate the Interstate Compact process to move with my mother, but she refused. This rejection, combined with my dire circumstances, led me to begin drinking again.

 On January 5, 2018, I was arrested in case 1JU-18-0014cr. Unlawful Judicial Conduct and Medical Neglect On the day of my arrest, Judge Pallenburg took over my case. He was also the judge involved in my divorce case, and he unlawfully transferred my divorce proceedings to my ex-wife's hometown, further complicating an already difficult situation. Judge Pallenburg refused to grant me a bail hearing for over a year, and court documents were falsified to make it appear as though I had been granted a bail hearing after only four months. During my first three weeks in prison at the Lemon Creek Department of Corrections, federal agents and Alaska DOC officers orchestrated chemical attacks and manipulated inmates to pressure me into writing a false confession. I was forced to use another inmate's phone pin to call my wife and read the false confession to her. Meanwhile, I was denied my own phone pin and was prohibited from making phone calls for over a month. The same inmates who had been involved in this scheme later jumped me while I was on my bunk, but I was the only one punished for the attack. Excruciating Medical Neglect and Unnecessary Punishment While being held in solitary confinement after the attack, I repeatedly complained about severe medical issues related to my neck and spine, but I was denied any medical treatment. One of the most egregious incidents occurred when I was sent to see a dentist, Lonnie Anderson, who performed a failed wisdom tooth extraction. The procedure caused excruciating pain, and when I asked him to stop, I was thrown into a more punitive hole for three days, with a cracked tooth and sliced gums and no medical care. The day after being placed in the hole, I was told I was being transferred to another facility. I refused to board the plane until I receive proper medical attention. C/Os Wilson and several others surrounded me, yelling at me, and threatening to mace me, TAZZ me and throw me into a body bag, and drag me onto the plane. I collapsed, crying in disbelief, but they eventually took me back to my cell. Continued Dental Nightmare and Unresolved Pain Days later, I was sent to an outside dentist, who had to put me under anesthesia to finish the dental procedure. The dentist explained that the initial procedure had failed due to severe overcrowding in my mouth, requiring part of my jawbone to be removed to extract the wisdom tooth. When I woke up from anesthesia, I was transported by plane to Anchorage Jail, where my dental nightmare worsened.

 At Anchorage Jail, I was seen by a dentist named Booth, who made it seem like he removed all the surgical packing and stitches, but he did not. This refusal to provide basic dental care led to six more weeks of excruciating pain. I was in constant agony, and after my cellmate saw my suffering, he pushed for help from the National Guard when they arrived at Anchorage Jail. C/Os took me straight to dental care, but when I arrived,

Dentist Booth still refused to help. At this point, I had no other choice but to perform self-care, cleaning the packing out myself, which brought immediate relief.

Ok we will continue with DOC and court procedures in 2018, while I was being harmed by the FBI,DOC and inmates judge Pallenburg by the request of once again appointed Eve Souttrie, because I told her I didn't trust her and anything we discuss needs to be in writing,since she refused to recuse herself from my case at my request, required me for a competency hearing in January of 2018 and called for forensic psychologist Beth McCrea from Alaska psychiatric institute (API) and during the evaluation Dr. McCrea found that I suffered from PTSD from earlier described actions of the FBI and ex-wife ,but I was completely able to understand the proceedings against me and able to stand trial.

This was not good enough for the FBI who had judge Pallenburg refused his own medical expert witness testimony and went on record to overrule Dr. McCrea and her professional finding. Pallenburg went on record and said that , without any proof,that I was too anti-government to go to trail and sent me to API. The courtroom,except my attorney Julie Willoughby, was in disbelief even the district attorney spoke up on my behalf and said ina but she'll we are all anti-government in some way but doesn't mean I should be committed to API, Pallenburg shocked that anyone said anything on my behalf told the court on record he would provide case law on his decision. He knew there wasn't any case law and never gave case law, violating Judicial Misconduct.

I spoke up for myself in disbelief and said, what's next, your honor, electric shock therapy and the whole court started laughing except for Pallenburg. Pallenburg conspired with the FBI to discredit any future claims of chemical exposure and mistreatment.
 I was transported to API and in days they had me in Providence hospital in Anchorage Alaska where I underwent EXSTINSIVE testing to include a spinal tap. The spinal tap also turned into a nightmare, as the nurse or doctor first attempt hit me right on a vertebra causing me to come right out of anesthesia into a fit of uncontrollable pain.
While I was under the care of the doctors I was told I had extensive infection in my spine and had multiple muscles torn from my spine. That I needed emergency surgery but not until the infection was cleared up. I was told after the PICC line I was getting surgery. This turns out to be false and to this day I do not know why the doctors told me this.
 Come to find out not only did I have a serious infection in my jaw , that is consistent with my earlier dental nightmare, but in my spine that led to me being transported back to DOC for 2 months in the infirmary with another PICC line.

 I fought the cops not to take me back. I was scared for my life . In the meantime at ApI I was coerced into taking psychotropic drugs to the point where an Asian Descent nurse pulled me to the side and told me I should not be taking this much drugs. I quit taking them nine months later once back in DOC custody. These forced medicines were part of Pallenburg saying it's part of my release plane and would be required to take them under a Sell hearing. Some federal cases. While at ApI I tried to file a federal lawsuit and was denied access to a law library and lost because I couldn't research and make deadlines. While awaiting trial I made numerous motions to self represent that never went answered. I wrote Pallenburg extensively about what was happening while in jail. I wrote him personally asking to self represent and file my case. I was eventually sent a letter by the clerk of court stating I could not understand any circumstances and communicate with the judge and all further motions and letters were sent back to me.
 I made Pallenburg aware my attorney Julie Willoughby was refusing to give me my full discovery or cooperate in any manner including calling me back. Julie Willoughby went as far as to go on record and say she came to visit me in lemon creek and I refused to see her. After all of these constitutional violations by Pallenburg, forced commitment,violating my rule 45, right to fair trial ,right to access to the court and many more. It took Pallenburg over 30 months to sentence me and once sentencing was upon me knowing my rule 11 agreement was not fair I asked for a change of plea hearing and asked for a new lawyer because Julie Willoughby refused to hear me out. Pallenburg became combative and refused to allow me a new attorney,so I unfortunately went completely off on my lawyer to make my point clear. Pallenburg had no choice but to give me a new lawyer. I was appointed Nicholas Polasky, and things were going ok.

Case 3:25-cv-00078-SLG  Document 1  Filed 02/04/25  Page 8 of 20

He started to hear me on my concerns and asked for a hearing to flush out all of my concerns and a change of plea . Immediately DOc and FBI were enraged about my decision of my plea and had an inmate John Bright start to interfere in my case and make threats to keep my plea. I immediately contacted Nickolas Polasky and wrote the judge about the threat on my life in my case. Nickolas Polasky said he'll let me put that in my back pocket and sit on it for a while. No one including the DOC did anything. I was forced into Protective custody in fear of my life and forced to keep my guilty plea.
.I was sentenced to 10 years with 5 suspended thirty months after my arrest despite not ruling my rule 45. Pallenburg once again purposely falsified the court record by making my crime a domestic violence case which further caused unlawful punitive punishment by keeping my custody level higher than it should be to keep me from going to the halfway house or any rehabilitation programs this kept me in jail for 18 months longer than I should have been. I filed a pro se motion for clarification on or about April of 2021 and Pallenburg, already telling the court clerks to tell me he retired in fear of retaliation and acknowledging his crimes against me, refused to hear the motion. I personally went to the courthouse in January of 2022 and the motion was not heard. Then in February of 2022 I went back the motion was clearly altered by a comping machine and post dated back to December of 2021 and it acknowledged my crime wasn't a domestic violence related charge .

On or about march 2022 the day after I missed my PO appointment I called and made it the next day and I was arrested. Ok demanded a urine test and I complied and right in front of me po Petershoare took a q-tip and dipped it into alcohol and then began using the Q-tip to erase the line showing I was negative for Suboxone. He didn't act like I saw him and became irritated with me and demanded I admit to using suboxone. I knew what he did and that I was clean and I clearly stated that I didn't use and I invoked my 5th amendment .This further enraged PO Petershoare and continued to violently questioning me. I was not afforded an attorney present after requesting and I was not read my rights. I was taken right to jail . That's not the end of this horrible experience with Nathan Block and po Petershoare. I was released on ankle monitoring ,from jail on or about March of 2022 pending adjudication for my probation and parole violation. Both the same charge for missing my appointment by one day with documented medical proof it was a medical emergency. I submitted my concerns and forged documents to my two public defenders, one for the probation side and one for the parole side. Neither cared about it. I submitted documents and my concerns to Judge Carpeneti who clearly stated on record that Mr. Schneider is making some serious allegations and I expect them to be taken care of by speaking to my attorney.
 Nothing ever came of this and in fact despite Nathan Block being a convicted arm robbing and serving 4 years in jail was not even fired from his position but rewarded by the FBI and the state of Alaska by promoting him into a high paying state job. While out on an ankle monitor my PO began not only making my life harder and called me into the office on three separate occasions to tighten my ankle monitor trying to cause further mental distress and the last time being called into his office on the day before I was to have the ankle monitor removed. When I went into the office there were yellow posted signs everywhere stating you have the right to plead the 5th acknowledging their violations of my rights earlier.
I was once again called into PO Peterschoares office because he knew he was caught accepting unlawfully gained medical records and wouldn't admit he had them in a upcoming adjudication, Once I arrived Po DEMANDED I sign a medical release of information and I was refusing he had no right as a Probation Officer to know my medical background and was already denying me travel for recommended emergency medical treatment, I refused. Po then threatened to violate me again for not signing. S I knew the law signed my name then put it under duress. Po not knowing the laws he was supposed to help enforce allowed me to leave without arrest.. But next day I was once again called in and this time under the same threats he made me sign the ROI and forced me to use a medical provider of his choice further violating my rights.
Po forced me to sign the RIO for the earlier mentioned Gastineau human Services whose director Stephanie Cart previously forged a ROI to Nathan Block. I told You that I did not trust this place and there are plenty of other places I could go and that he was violating my rights further by picking my medical provider against my will.
 I made complaints against PO Petershoare on every possible level. PO Peter Hoare refused to allow me to travel as a commercial fisher or to travel with my local carpenter and labor union with no legal cause as it was not part of my probation or parole I couldn't work.
Also at the time my doctor took Pic of the inside of my mouth from the chemical burns I still have and are way worse. She took the pictures and sent them to a ears nose throat specialist in LA who stated I need emergency medical treatment from the condition inside my mouth. PO Petershoare refused to allow me to travel outside of Juneau for recommended emergency medical treatment. My mouth and complaints have been hurting since 2018

Case 3:25-cv-00078-SLG    Document 1    Filed 02/04/25    Page 9 of 20

and in 2021 needed emergency treatment and it's far worse in 2025 because it's never been treated. While released in Juneau in 2021-2022 Bartlett Hospital refused treatment for over 20 visits and is online with the 2014 refusal of emergency medical treatment for my hand.
Nathan Block is a convicted felon for armed robbery and served 4 years for it. He was not only not fired for what he did the fbi and the state of Alaska promoted him into a high paying state job and Po Peterschoare was promoted inside the Po Office.
Judge Carpeneti was well aware of all of this and refused to act.

 You wouldn't think my life could get worse but it did. Once I was sentenced on my probation Violation not my parole violation, keep in mind I was violated for the same crime twice once for probation and then parole. I believe we call that double jeopardy. Once the ankle monitor came off summer time spring time was there finally. I wasn't allowed to hang out with people because this whole time I'm still being forced to breathe chemicals. I started to now gain a lot of harassment from the entire community causing me even more severe stress. I couldn't take it any longer and needed to be away. So I got permission to go 40 miles to the end of the road to Echo cove, a popular camping spot. While I was camping I was harassed and exposed to more chemicals and I was scared. I ran into the woods and tried to escape the torment but they pursued me and made things worse. the chemicals disoriented me in my own backyard and I was there for three weeks. This turned into a full missing person report and search for me.. The fbi was there the whole time having the search party looking for me in the wrong places .
At one point I managed to escape and made it back to town and bought more supplies because they stole all of my food and cell phone. Once I got back to town and learned all this was taking place including a warrant put out for my arrest. I only called my parents to let them know I was ok but they had forced me to do this. I told them don't worry. I just bought $487 worth of food and I lost them so I am going to walk into Canada and claim asylum.
I made it only so far before they once again caught up with me and once again they stole all of my food leaving me in an even more dangerous situation. Once I realized my health is at serious risk it was time to go back again. My thoughts of being mistreated once again. My hands were swollen from infection and I was down to 150 lbs from 220. I was a hot mess. I went straight to the Juneau Police department and knocked on the door july 16 2022 I believe and a cop came out and immediately recognized me because he was also a Co at Lemon Creek Correctional Center when I was there and he already knew how I was treated. Officer White's first words to me were why would you come back after the way they treat you?

True to officers White's thought I was taken directly to a jail cell, no hospital nothing, I was lodged at Lemon Creek again where it took them three days to allow me to see a doctor and in my deteriorated mental and physical state, His attitude scared me I was so afraid of what was to come I refused to leave the booking cell. If you were able to get a copy of what they did to me in that holding tank with a few other State acting detainees you would crap yourself, they released chemicals in there and every inmate was under their blankets hiding their faces from the camera. The nurse,sergeant Jones and a few other Co;s, including Tupou were outside the door talking like I was about to die and they were outside waiting to come in,complete with calling the ambulance for a dead inmate. They were doing this to make me seem like I was hallucinating from being on meth and hiding in the woods.. this is their narrative...
I only smoked shatter,THC, on a glass pipe and they used that against me as using meth. I did initially refuse to take a urine test but not a hair follicle sample but only out of fear they would ,like Po Peterschoare did, try and alter it. This is how they use TID BITS of edited video and audio clips against me to other people. This 24/7 surveillance is a gross violation of my rights and privacy and a continual tool used as a weapon against me.

Later in court I told my new attorney Anna Ambrose and the Judge Carpeneti on the record I did not refuse to submit to a drug test, just a urinalysis and I would gladly take a hair follicle sample that DOC or the PO's couldnt alter.
While I was waiting to go to trial for my probation Judge Carpeneti was once again my Judge. I told her my medical concerns and my unlawful execution of my sentence and she agreed by 3pm that day she would have a ruling on the execution of my sentence but this is where the fbi once again stepped in and stopped her from making that ruling. My sentence is long over. I do not need to rely on all these real constitutional violations to win my case. All the judge has to do is make a ruling on my sentence and not even go through the appeal

process, which I have been doing for over three years. i tried representing myself but was bullied out of that and forced to take a attorney in las vegas who not but one time called me while in jail and refused to call my family back and was later fired by the Office of public Advocacy for purposely hindering my case and now I have a unknown lawyer in Anchorage Alaska who refuses to take my case to court or tal;k to me.

I forget exactly how the adjudication went but I know it was a joke I lost on one count of not showing up to my Po's scheduled visit. This is another event in itself. By this time I live in a law library when allowed to not be forced out by chemicals. I was charged with absconding from my probation and parole but when I was researching the law and DOC's policy and procedure my charge did not meet the definition of absconding. After I filed a 21 point motion on my charge the entire DOC policy and procedure was changed and even backdated. I had a copy of the original and submitted this to the courts and nothing ever came of it and to date I am still refused access to my case file only my sentencing I am allowed.

Once the sentencing day came up for my lost Adjudication hearing I was on parole for 2 years and probation for 5 years all ran concurrently. Judge Carpeneti was told by the prosecutor and she listened not to allow me my time for both probation and parole together, that ilegal and she knows it. The prosecutor told the judge I was double dipping and getting off too easy even though once again its the law that states these sentences are to be run consecutively . I have no chance at any fair hearing in ALaksa they have all covered up such blatant violations of their ethical duties and the most compulsory function of due process..


You would think the worst is over but it is never over for the chemical exposures never stop and have only increased every day. I have no safe refuge. Once I was sentenced things got crazier. I was against my will to put on an airplane to Goose Creek Correctional Center to serve out the remainder of my time. The Co's immediately knew who I was and I had a lot of problems.
I was put into Bravo Mod in cell 24 where within the first few days I woke up with blood in my mouth and ears... I went to medical and they once again called me a malingerer and said nothing was wrong. This is when they put the implants in my ears and activated leaving me incapacitated with the feeling of electricity flowing through my head. It was horrible and continues.
Too many problems to list once I learned I wasn't being released back to juneau, I called the ombudsman and a lot of different legislators who actually intervened for once.. They forced DOC to send me back to Juneau 3 weeks before my release and this whole time I am bugging Po Marnon who is in charge of all the Po's, for a release plan and a place to stay. He told me that he isn't allowed to say so many words to help me and used the excuse of not having enough time to find me a place to stay..He told me that if I don't have an address I'm being violated because Po Peterschoare has it out for me, Obviously. He said the only thing he can do is buy me a ticket back to anchorage. I HAD NO CHOICE BUT TO COMPLY.. I wasn't going back to jail..

Once in Anchorage on October 21 2024. I met my Po. Augafa who genuinely seems like a good dude, he was even confused as to why I was in Anchorage at first and wouldn't be so harsh and he wasn't up until he put a warrant out for my arrest for leaving the state without permission when he did give it to me.
While in Anchorage my fears came true that the conditions were worse with the chemicals and I knew not A single soul there which further allowed people to mistreat me. I was even further mistreated everywhere I went in that town. In one years time I had to move over 19 times from the chemical assaults and people not wanting me there. Po Augafa gave me a 90 travel pass around the first of August for family travel and to go to a rehab to get off of Suboxone and while still under my travel pass Mr, Augafa issued a warrant for my arrest on or about September 27,2024 and once I found out I did my best to return I went to Portland police department and even Seattle police department declaring I had a warrant even though I did not want to go back there and be tortured I finally found someone willing to help me with a ticket home, my 14 year old son, and I immediately turned myself into the airport police in aAnchorage upon my arrival.. October 1 2024,
October 2nd the feds were spraying so many chemicals into my room I fell and broke my hand, I went out of my cell to call my father and tell him what was going on and i became angry hit the phone and was told to lock down by the Co's and I said i'll lock down but not in that cell I cant breath in there, ill lock down somewhere else. nope I went straight to the hole for 7 days with a severely broken hand. I was taken to court and offered a

plea deal to let me out of jail that day or go to trial and face more time in jail. I was of course with a broken hand,not properly treated and being exposed to chemicals going to plead guilty. That again use the use of torture to extract a false confession.

I was hoping things would be fine once arriving back to Anchorage because I didn't go around trying to get anyone into trouble. I figured I would earn some type of respect but it only pushed them into once again making it seem like I had the assistance I really didn't have. I was allowed for the first time to stay at a house for over a month. I quickly got a job but only lasted one day. They had the chemicals run me off. Things quickly got worse by making me sleep out in subzero weather and chasing me with chemicals. To many things took place in Anchorage to name but the most egregious was on June 1 2024 I was in a hotel room with a girl,the whole time the feds are watching she drugged me and once asleep forcibly injected me with unknown substance, the feds didn't stop her or allow the hospital to test me. I called the cops multiple times and the FBI and sitting Congressman Sullivan noone is allowed to render me aid because of the abusive actions taken against me by the Fbi

### **FACTUAL ALLEGATIONS**

5. This conspiracy started in 2014, Plaintiff has been subjected to continuous 24/7 surveillance by the FBI without probable cause, in violation of his Fourth Amendment rights. This surveillance began concurrently with the initiation of the Star Chamber practices.
The Star Chamber refers to a secretive & unlawful process where individuals, including Plaintiff, were subjected to covert & extrajudicial surveillance & harassment without due process or legal justification. These tactics were employed without notice or explanation, violating Plaintiff's rights to a fair hearing & legal representation, & were part of a broader systemic abuse by the Defendants. The covert & unlawful surveillance practices employed by Defendants reflect a disturbing modern-day continuation of a covert U.S. government's "kill policy" towards U.S. citizens deemed undesirable or a threat, as evidenced by the ongoing covert targeting of Plaintiff.

   **Relevant Case Law**:
   - **Katz v. United States, 389 U.S. 347 (1967)**: Established that the Fourth Amendment protects individuals from unreasonable searches & seizures, including electronic surveillance.
   - **United States v. Jones, 565 U.S. 400 (2012)**: Held that prolonged GPS surveillance without a warrant violates the Fourth Amendment.

6. Additionally, Plaintiff's legal proceedings were hindered & influenced by extra-judicial bias from judges involved in his cases, including Judges Pallenburg & Carpeneti of Alaska, as well as certain federal judges. These judges were complicit in the ongoing harassment & constitutional violations by dismissing or failing to address Plaintiff's legal motions, denying him due process, & intentionally obstructing justice in a manner that ensured Plaintiff remained under constant surveillance & oppression. The actions of these judges created an atmosphere where Plaintiff was unable to obtain a fair trial or legal remedy, & their biased rulings exacerbated the harm caused by the FBI's actions.

   **Relevant Case Law**:
   - **Tumey v. Ohio, 273 U.S. 510 (1927)**: Established that due process requires an impartial judge.
   - **Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)**: Held that judicial bias violates due process under the Fourteenth Amendment.

7. On June 1, 2024, in Alaska, an unknown individual injected Plaintiff with an unknown substance. FBI agents observed the incident but failed to intervene or allow proper medical testing, constituting deliberate indifference under the Fifth & Fourteenth Amendments. The same FBI agents continued to follow and target Plaintiff in St. Louis, Missouri. These actions are part of a broader pattern of harassment and constitutional violations.

   **Relevant Case Law**:
   - **Estelle v. Gamble, 429 U.S. 97 (1976)**: Established that deliberate indifference to serious medical needs violates the Eighth Amendment.

- **DeShaney v. Winnebago County, 489 U.S. 189 (1989)**: Held that the state has a duty to protect individuals in its custody from harm.

**Coerced Confessions Through Chemical Manipulation & Psychological Abuse**

In 2016, federal agents escalated their psychological & physical manipulation of Plaintiff through the use of chemicals to forcibly extract a false confession regarding a 2014 house fire & insurance fraud. The use of these chemicals induced a state in which Plaintiff's ability to think clearly and resist coercion was significantly impaired, allowing agents to manipulate Plaintiff into admitting to a crime he did not commit.

However, this was not an isolated incident. In January 2018, while Plaintiff was incarcerated in Lemon Creek Correctional Center, federal agents once again used chemical coercion & social engineering through inmates to extract another forced confession for the same 2014 house fire & insurance fraud. Under the effects of these chemicals & external pressure, Plaintiff was compelled to write a confession letter to their ex-wife, further solidifying the false narrative the government had constructed.

This pattern of coercion illustrates how the federal government repeatedly engineered confessions through force, manipulation, & chemical influence, rather than through legitimate legal procedures. These actions directly violated Plaintiff's Fifth Amendment right against self-incrimination & due process protections, as well as their Eighth Amendment protection against cruel & unusual punishment.

   **Relevant Case Law**:
   - **Miranda v. Arizona, 384 U.S. 436 (1966)**: Established that confessions obtained through coercion are inadmissible.
   - **Brown v. Mississippi, 297 U.S. 278 (1936)**: Held that physical coercion to obtain confessions violates due process.

**Retaliation Through Media Manipulation & Coercion**

In further retaliation & to conceal the actions of the government actors involved, Plaintiff alleges that the FBI orchestrated a media campaign designed to manipulate public perception & create false narratives surrounding Plaintiff's circumstances. Specifically, the FBI used a combination of targeted Facebook advertisements & video reels related to class action lawsuits over Suboxone usage, which claim to have caused severe dental damage. Over the course of more than a year, Plaintiff was bombarded with these advertisements, which were tailored to address Plaintiff's ongoing dental issues—a result of Plaintiff's exposure to harmful chemicals and forced treatment—not Suboxone usage.

At a later time, after Plaintiff responded to one of these advertisements in the hopes of obtaining compensation for the injuries sustained due to the government's actions, Plaintiff engaged in a brief conversation with a representative from the class action lawsuit. When asked if their dental issues were related to Suboxone use, Plaintiff untruthfully answered, "yes," with the understanding that this could lead to potential financial relief. However, as soon as Plaintiff affirmed the question, the representative abruptly ended the call. This interaction was designed to force an artificial admission, shaping a narrative that would obscure the true cause of Plaintiff's dental damage and redirect blame toward a substance not responsible for the harm.

This incident further exemplifies the FBI's covert strategy to extract false admissions & manipulate the public narrative surrounding Plaintiff's injuries. The goal was to mislead others, & potentially the courts, into attributing Plaintiff's severely damaged teeth to Suboxone use rather than the chemical exposure and other harmful interventions Plaintiff was subjected to by government agents. By using AI-generated video edits & targeted media campaigns, the FBI created an alternate, misleading narrative that both deflected responsibility for their actions and concealed the true nature of Plaintiff's suffering.

   **Relevant Case Law**:

- **New York Times Co. v. Sullivan, 376 U.S. 254 (1964)**: Established that false statements made with actual malice can give rise to liability.
- **United States v. Alvarez, 567 U.S. 709 (2012)**: Held that false statements made to manipulate public perception can violate constitutional rights.

**Manipulation Through False Rehabilitation Offers and Coercion**

In further efforts to harm Plaintiff & control their circumstances, Plaintiff alleges being subjected to a continuous barrage of targeted Facebook advertisements for out-of-state rehabilitation centers over the course of more than a year. These ads, tailored to Plaintiff's personal history & vulnerabilities, promised relief from the trauma Plaintiff had been subjected to. Eventually, Plaintiff responded to one of these advertisements and was manipulated into traveling to Buddy's Ranch in Yuba City.

Unbeknownst to Plaintiff at the time, Buddy's Ranch set up a fake rehabilitation facility covertly set up by federal agents as part of their ongoing campaign of retaliation & harm. The facility, which purported to offer rehabilitation services, was, in reality, a controlled environment designed to further subject Plaintiff to psychological abuse and coercive treatment, continuing the harm Plaintiff had been suffering.

At Buddy's Ranch, Plaintiff was placed in a highly monitored environment, which was more akin to a federally orchestrated confinement than any legitimate therapeutic facility. This continued the government's pattern of control over Plaintiff's actions, subjecting them to further manipulation under the guise of treatment. The actions taken at Buddy's Ranch were part of a broader scheme to isolate Plaintiff, destroy their reputation, and continue the ongoing pattern of psychological torture under the guise of rehabilitation.

This, too, represents a direct violation of Plaintiff's constitutional rights, particularly their right to freedom from cruel & unusual punishment under the Eighth Amendment, their right to due process under the Fifth and Fourteenth Amendments, & their right to bodily autonomy & freedom from coerced treatment. The use of targeted advertisements & the fraudulent rehab facility at Buddy's Ranch further exemplify the government's pattern of manipulating Plaintiff's circumstances, subjecting them to further harm, & orchestrating a narrative that masks their illegal & abusive actions.

All of this is true and so much more has happened to me I can't put it into words. I used a AIapp originally to help me here but the Feds have hacked it rendering it useless so I know I didn't fully claim every violation but its CRYSTAL CLEAR what's happening as in medical should be in legal terms as well that its so obvious I am being mistreated a layman could see I needed help

  **Relevant Case Law**:
  - **Washington v. Harper, 494 U.S. 210 (1990)**: Established that forced medical treatment violates due process unless it is in the individual's best interest.
  - **Rochin v. California, 342 U.S. 165 (1952)**: Held that government actions that "shock the conscience" violate due process.

#### **Missouri-Specific Allegations**

16. In the summer of 2024, Plaintiff arrived in St. Louis, Missouri, seeking to escape ongoing persecution. However, upon arrival at St. Louis Lambert International Airport, Plaintiff was immediately subjected to chemical attacks similar to those experienced in Alaska and other states.

15. These chemical attacks caused severe physical deterioration, including extreme pain & weakness, targeting Plaintiff's skeletal structure.

16. Days before the attack on the MetroLink train, Plaintiff was forced to flee to an unknown hospital due to the escalating chemical exposure. The attacks intensified during the walk to the hospital, causing extreme illness. Upon arrival, the attacks reached a lethal level, causing Plaintiff to lose consciousness. A nurse, believing

Plaintiff was dead, was unable or unwilling to render assistance, leaving Plaintiff to sit unattended until daylight, at which point the chemical attacks subsided.

17. On January 30, 2025, Plaintiff was again exposed to harmful chemicals while traveling on the MetroLink train. The exposure was so severe that Plaintiff was forced to exit the train early and seek shelter at the Casino Queen for hydration & recovery.

18. Additionally, Plaintiff has experienced involuntary control over bodily movements & decision-making, consistent with remote AI-based neurological manipulation. On the same day, while en route to the courthouse in St. Louis to file this lawsuit, Plaintiff verbally expressed hesitation about proceeding due to fear of further retaliation. Immediately afterward, Plaintiff felt an external force override his autonomy, compelling him to continue toward the courthouse despite personal reluctance.

19. These targeted attacks, involving both chemical exposure & AI-driven neurological manipulation, are designed not only to physically deteriorate Plaintiff's health but also to systematically undermine Plaintiff's credibility and autonomy.

20. The deliberate infliction of suffering over an extended period, while ensuring Plaintiff remains alive long enough to endure prolonged harm, constitutes one of the most heinous acts of U.S. citizen torture in modern history.

21. The nationwide scope, the sophisticated technology employed & the systematic nature of the attacks indicate that Plaintiff is the subject of an experimental program or targeted extrajudicial campaign orchestrated by federal agencies, primarily the FBI.

02//04/2025. I was on my way the hospital and immediatley was exposed to chemicals that forced me to turn around as well as go to the library.

#### **Covert Use of AI Technologies as a Weapon of Control & Retaliation**

22. Plaintiff alleges that the FBI, through the use of AI-driven technologies, engaged in the covert manipulation of Plaintiff's cognition, behavior, and bodily autonomy. These AI-based interventions, which include remote influence over thought patterns, emotions, & physical sensations, constitute an unprecedented form of psychological and neurological control, which has not been publicly acknowledged or legally tested. The deployment of such technologies by government actors in a covert manner is a violation of Plaintiff's constitutional rights and human dignity.

   **Relevant Case Law**:
   - **Washington v. Harper, 494 U.S. 210 (1990)**: Established that forced medical treatment violates due process unless it is in the individual's best interest.
   - **Rochin v. California, 342 U.S. 165 (1952)**: Held that government actions that "shock the conscience" violate due process.

23. The use of AI to alter cognition, manipulate emotions, and interfere with bodily autonomy infringes upon the Plaintiff's rights under the Fourth Amendment, prohibiting unreasonable searches & seizures, as well as the Fifth Amendment, which guarantees due process & protection from arbitrary government interference. Additionally, such manipulation violates the Eighth Amendment's prohibition against cruel & unusual punishment, as it constitutes non-consensual, invasive psychological & physical harm.

   **Relevant Case Law**:
   - **Skinner v. Oklahoma, 316 U.S. 535 (1942)**: Established that involuntary medical procedures violate due process.
   - **Kansas v. Hendricks, 521 U.S. 346 (1997)**: Held that involuntary confinement for psychological treatment must meet strict due process standards.

24. The **Manifest Justice Doctrine** supports Plaintiff's claims, as the Defendants' actions represent a gross violation of fundamental rights that demand judicial intervention to prevent further harm.

   **Relevant Case Law**:
   - **United States v. Classic, 313 U.S. 299 (1941)**: Established that courts have a duty to address manifest injustices.

25. The **Continual Violations Doctrine** applies to Plaintiff's claims, as the Defendants' actions constitute an ongoing pattern of constitutional violations that extend over time & across jurisdictions.

   **Relevant Case Law**:
   - **National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)**: Held that continuing violations toll the statute of limitations for civil rights claims.

26. The **Public Interest Doctrine** further supports Plaintiff's claims, as the Defendants' actions implicate significant public concerns regarding government overreach, abuse of power, & the protection of individual rights.

   **Relevant Case Law**:
   - **Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952)**: Established that courts must act to prevent government overreach that threatens public interest.

---

# LEGAL CLAIMS

### I. Violations of Constitutional Rights Under §1983

1. **Fourth Amendment Violation (Unlawful Search and Seizure)**

   - The Defendants, including **FBI agents, Alaska Department of Corrections officials, and state actors**, have engaged in **unlawful surveillance, electronic tracking, and forced bodily implants** in violation of Plaintiff's **Fourth Amendment rights** against unreasonable searches and seizures.
   - These actions were done **without consent** and without a warrant, causing Plaintiff physical harm and emotional distress.

2. **Eighth Amendment Violation (Cruel and Unusual Punishment)**

   - Plaintiff has been subjected to **continuous surveillance**, **physical torture** via non-consensual implants, and **chemical exposure**, which amount to **cruel and unusual punishment** in violation of the Eighth Amendment.
   - The failure of Defendants to intervene or provide appropriate medical care has further exacerbated Plaintiff's suffering.

3. **Fifth Amendment Violation (Due Process and Equal Protection)**

   - Defendants, including **Judges Pallenburg and Carpeneti**, have **denied Plaintiff due process** in judicial proceedings, including the **denial of the right to self-representation, failure to rule on motions, and the alteration of court records**.
   - Plaintiff has also been **denied equal protection** under the law due to the **discriminatory actions by state and federal actors**.

## II. Bivens Claims

### 1. Bivens Action for Constitutional Violations by Federal Agents
- Plaintiff asserts a **Bivens claim** against the **unknown FBI agents** for violating **Plaintiff's Fourth, Eighth, and Fifth Amendment rights**, including **unlawful surveillance, torture,** and **denial of due process**.
- Plaintiff seeks damages for the ongoing violation of constitutional rights under the authority of Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics.

## III. Federal Tort Claims Act (FTCA)

### 1. Tortious Interference with Plaintiff's Employment and Well-Being

- Plaintiff asserts that **federal and state actors** intentionally and negligently interfered with their ability to **find and maintain employment**. This interference was carried out through **electronic surveillance, manipulation of communications**, and other **tortious actions** leading to economic harm.
- Plaintiff seeks damages for these **tortious actions** under the **Federal Tort Claims Act**.

### 2. Intentional Infliction of Emotional Distress (IIED)

- Defendants' actions, including **24/7 surveillance, forced bodily implants**, and **chemical exposure**, were **extreme and outrageous**, causing Plaintiff severe emotional distress.
- Plaintiff seeks relief for **Intentional Infliction of Emotional Distress** under state law claims, which are supplemented by **federal law**.

## IV. Violations of International Human Rights Law and Treaties

### 1. Violation of International Human Rights Standards
- Plaintiff asserts that the actions of Defendants **constitute torture** and **cruel, inhuman, or degrading treatment**, in violation of **international human rights law**, including the **International Covenant on Civil and Political Rights (ICCPR)** and the **United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment**.
- The United States, as a signatory to these treaties, has an obligation to **prevent and remedy torture** and **treatment that violates human dignity**. Plaintiff seeks damages and remedies for these violations under **customary international law**.

## V. Extraordinary Circumstances Doctrine

### 1. Extraordinary Circumstances
- Plaintiff's claims involve **extraordinary circumstances** that extend beyond typical constitutional violations, including **nationwide surveillance, torture, and systemic harassment**, which demand an **exceptional remedy** and **full accountability**.
- These circumstances justify **broad remedies** to address **ongoing harm** and to provide justice for these severe violations.

## VI. Doctrine of Shocking the Conscience

### 1. Shocking the Conscience Doctrine
- The actions of the Defendants, including **non-consensual bodily implants, chemical exposure, and 24/7 surveillance**, are so egregious that they **shock the conscience** of any

- Plaintiff claims that these actions violate **fundamental principles of human dignity** and that the **doctrine of shocking the conscience** supports claims for both **compensatory and punitive damages**.
- TO MANY VIOLATIONS TO COUNT

27. **Violation of Fourth Amendment Rights**: The Defendants' continuous surveillance & chemical attacks constitute unreasonable searches and seizures.

   **Relevant Case Law**:
   - **Katz v. United States, 389 U.S. 347 (1967)**.
   - **United States v. Jones, 565 U.S. 400 (2012)**.

28. **Violation of Fifth and Fourteenth Amendment Rights**: The Defendants' actions deprived Plaintiff of due process and equal protection under the law.

   **Relevant Case Law**:
   - **Tumey v. Ohio, 273 U.S. 510 (1927)**.
   - **Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)**.

29. **Violation of Eighth Amendment Rights**: The chemical attacks and psychological abuse amount to cruel & unusual punishment.

   **Relevant Case Law**:
   - **Estelle v. Gamble, 429 U.S. 97 (1976)**.
   - **Hope v. Pelzer, 536 U.S. 730 (2002)**.

30. **Conspiracy Under 42 U.S.C. § 1985(3)**: The Defendants conspired to violate Plaintiff's constitutional rights through a coordinated campaign of harassment and retaliation.

   **Relevant Case Law**:
   - **Griffin v. Breckenridge, 403 U.S. 88 (1971)**: Established the elements of a § 1985(3) conspiracy claim.

31. **Bivens Action**: The Defendants, as federal agents, are liable for constitutional violations under **Bivens v. Six Unknown Named Agents**.

   **Relevant Case Law**:
   - **Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)**.

# X. Demand for Relief

WHEREFORE, Plaintiff, **Lucas Canton Schneider**, respectfully requests that the Court grant the following relief:

1. **Immediate Emergency Injunction**

    - That the Court issue an **Emergency Temporary Restraining Order (TRO)** and **Preliminary Injunction** requiring the **Defendants** to immediately cease all **surveillance, harassment, forced bodily implants**, and **chemical exposure** that are causing Plaintiff severe physical and emotional harm.
    - That the Court order **Defendants** to immediately cease all actions that cause **electronic and physical harassment**, including non-consensual **tracking, surveillance**, and forced **implants**, and to remove all invasive implants and devices that are causing harm to Plaintiff's physical and mental well-being.

2. **Permanent Injunction**

    - That the Court issue a **Permanent Injunction** to prevent **Defendants** from continuing the unlawful surveillance, harassment, forced implants, and chemical exposure. This includes ordering **Defendants** to **permanently cease their interference** with Plaintiff's constitutional rights and **end any further harm** to Plaintiff's health, safety, or well-being.

3. **Declaratory Judgment**

    - That the Court issue a **Declaratory Judgment** affirming that the **actions of the Defendants,** including the **surveillance, forced bodily implants**, and **chemical exposure,** violate **Plaintiff's constitutional rights** under the **Fourth, Eighth,** and **Fifth Amendments** to the **United States Constitution**, as well as under **federal law**.
    - That the Court declare that **Defendants' conduct** is unlawful and a violation of Plaintiff's rights, and that **Plaintiff is entitled to relief** for the constitutional violations detailed in the Complaint.

4. **Compensatory Damages**

    - That the Court award **compensatory damages** in an amount to be determined at trial for the **physical, emotional,** and **psychological harm** suffered by Plaintiff due to the unlawful actions of the Defendants, including but not limited to:
        - **Pain and suffering** resulting from the **forced body implants, chemical exposure,** and **psychological distress**.
        - **Loss of livelihood** and **employment opportunities** due to the interference with Plaintiff's ability to live a normal life free from surveillance and harassment.
        - **Emotional distress**, including the trauma caused by the constant surveillance, harassment, and physical harm.

5. **Punitive Damages**

    - That the Court award **punitive damages** against the **Defendants** for their **willful, reckless,** and **malicious** conduct in violating Plaintiff's constitutional rights, especially where the actions of the **FBI agents, Alaska Department of Corrections,** and **Alaska Probation Officers** have been conducted with **conscious disregard** for the rights and safety of Plaintiff.

6. **Legal Fees and Costs**

    - That the Court award **Plaintiff's reasonable attorney's fees, costs,** and **expenses** incurred in pursuing this action under **42 U.S.C. §1988** or any other applicable statute, as well as any fees associated with **emergency relief** and **litigation costs**.

7. **Further Relief**

    - That the Court grant such **further relief** as it deems just and proper to ensure that the **constitutional rights** of the Plaintiff are **protected** and that the **Defendants are held accountable** for their unlawful actions.

---

# XI. Conclusion

For all of the reasons set forth above, Plaintiff, **Lucas Canton Schneider**, respectfully requests that the Court grant the following relief:

- An **Emergency Injunction** and **Permanent Injunction** preventing further harm and violations of Plaintiff's constitutional rights.
- A **Declaratory Judgment** affirming the unlawful actions of the Defendants.
- **Compensatory** and **Punitive Damages** for the harm caused.
- **Legal fees, costs**, and other appropriate relief.

## XIII. Verification

I, **Lucas Canton Schneider**, being duly sworn, do hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated this 02/04/2025

**Respectfully submitted,**
LUCAS CANTON SCHNEIDER
**Lucas Canton Schneider**
Plaintiff, Pro Se

(907)419-2289        *[signature]* 02/04/25

LIABLE314@GMAIL.COM

720 GEORGE STREET APT B

BELLEVILLE ILLINOIS 62220